65



JAN 11 2011

David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| vs. | § | CRIMINAL NO.: |
| | § | |
| HOSSEIN LAHIJI, M.D. | § | |
| | § | **H 11     030** |
| and | § | |
| | § | |
| NAJMEH VAHID LAHIJI, | § | |
| Defendants | § | **UNDER SEAL** |

**INDICTMENT**

THE GRAND JURY CHARGES:

UNSEALED PER ARREST

Sealed
Public and unofficial staff access
to this instrument are
prohibited by court order.

## COUNT ONE
### (Conspiracy - 18 U.S.C. § 1349, § 1347 and §2 )

**A.   INTRODUCTION**

At all times material to this indictment:

1.     The **Defendants Hossein Lahiji, M.D.** and **Najmeh Vahid Lahiji** owned, operated and were employed at Lahiji Urology Centers, PA (hereinafter referred to as "Urology Center"), located at Nolana Professional Center, 801 E. Nolana, STE 20 in  McAllen, Texas from June 2002 until the present time.  Prior to June 2002, Lahiji Urology Center was located at  Medical Arts Building, 1315 E. 6th Street, Suite 1, in Weslaco, Texas.

2.     On December 8, 1995, the Texas Medical Board of Medical Examiners issued **Defendant Hossein Lahiji, M.D.'s** a license to practice medicine in the State of Texas.

3.     In 1995, **Defendant Hossein Lahiji, M.D.** submitted a Medicare/Federal Health Care Provider/Supplier Enrollment Application.

4.     **Defendant Hossein Lahiji, M.D.** was issued a Medicare provider number that was made retroactive to August 25, 1995 and was assigned provider number: 00T85N.

5.     On October 1, 2002, **Defendant Hossein Lahiji, M.D.** was issued a Medicare group provider number: 00736U.

6.     On September 8, 1995, **Defendant Hossein Lahiji, M.D.** submitted a Texas Medicaid Provider Enrollment Application.

7.     On November 3, 1995, **Defendant Hossein Lahiji, M.D.** was approved to be a provider for the Texas Medicaid Program and assigned Provider ID: P000T85N4.

8.     On February 5, 1999, **Defendant Hossein Lahiji, M.D.** submitted the required Texas Medicaid Provider Re-enrollment Application and was assigned Texas Provider ID: 1002123.

9.     On April 11, 2003, **Defendant Hossein Lahiji, M.D.** submitted a Texas Medicaid Group Provider Enrollment Application in the name of Lahiji Urology Centers, PA.

10.     On May 23, 2003, Lahiji Urology Centers, PA was approved as a group provider for the Texas Medicaid Program and assigned Provider ID: 1570533.

11.     **Defendants Hossein Lahiji, M.D.** and **Najmeh Vahid Lahiji**, and other employees of the Urology Center, both known and unknown to the Grand Jury, billed Medicare and Medicaid for evaluations and physician urology services claimed to have been performed by **Defendant Hossein Lahiji, M.D.** during the time period of approximately January 1, 2003 through January 31, 2006.

## THE MEDICARE PROGRAM

12.     The Medicare program is a federally funded health insurance program that provides health care benefits to any person 65 years of age or older, and to certain disabled individuals (also known as "beneficiaries").

13.     Medicare is administered by the United States Department of Health and Human Services (hereinafter referred to as "HHS"). The agency within HHS responsible for the oversight of Medicare is the Centers for Medicare and Medicaid Services (hereinafter referred to as "CMS"), formerly known as the Health Care Financing Administration ("HCFA").

14.     Medicare primarily consists of two parts. Medicare Part A pays for institutional services, such as inpatient care rendered at hospitals. Medicare Part B pays for certain physician services, outpatient services, and equipment. This would include urology services provided by a licensed physician.

15.     CMS contracts with private contractors, typically insurance companies, to administer Medicare, that is, to receive, process, and pay claims. A contractor who administers Part B of Medicare is known as a "carrier".

16.     In Texas, between January 2003 and January 2006, the Medicare Part B carrier was TrailBlazer Health Enterprises, LLC (hereinafter referred to as "TrailBlazer") located in Dallas, Texas. As of February 1, 2009, the Texas Medicare program has been administered by carrier, Health Integrity, located in Dallas, Texas.

17.     Medicare is a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

## THE MEDICAID PROGRAM

18.     The Texas Medicaid Program is a state administered health insurance program that provides health care services to the poor. Each individual state designs and administers its own Medicaid program, subject to the requirements mandated by Centers for Medicare and Medicaid Services (hereinafter referred to as "CMS"). The Texas Medical Assistance (Medicaid) Program was implemented on September 1, 1967, under the provisions of Title XIX of the federal *Social Security Act* and Chapter 32 of the *Texas Human Resources Code*. The Health and Human Services Commission (HHSC) is the single state Medicaid agency responsible for the Title XIX Program. The State of Texas and the federal government share the cost of funding Texas Medicaid. The program is jointly funded by the federal government as long as the state's program complies with CMS's requirements. Examples of covered services include inpatient hospital care, skilled to intermediate nursing home care, professional services provided by physicians, dentists, laboratories, and suppliers.

19.     Until December 31, 2003, the State of Texas contracted with the National Heritage Insurance Company (hereinafter referred to as "NHIC") to process and pay Medicaid claims submitted by health care providers.

20.     From January 1, 2004 until the present, the State of Texas has contracted with the Texas Medicaid and Healthcare Partnership ("TMHP") to process and pay Medicaid claims submitted by health care providers.

21.     Health care providers submit bills for services rendered to the Texas Medicaid Program by and through TMHP (formally NHIC) for processing and payment. A licensed health care provider could enter into an agreement with TMHP allowing for the automatic submission of

claims via electronic media and for payments to be directly deposited into the health care provider's desired bank or checking account or simply receive a paper check in the mail.

22.     Medicaid is a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

### MEDICARE & MEDICAID COVERAGE FOR PHYSICIAN SERVICES

23.     Physician services include those reasonable and medically necessary services ordered and performed by a physician or under a physician's personal supervision that are within the scope of the practice of their profession as defined by state law.  For each encounter, a physician must examine the patient; confirm or revise the diagnosis of record; confirm or revise the plan of care; and document those tasks in the appropriate medical records for the client before submitting claims.

24.     Medicare provides for payment for "incident to" services.  "Incident to" services are defined as services or supplies that are furnished as an integral, although incidental, part of the physician's personal professional services in the course of diagnosis or treatment of an injury or illness.  Coverage for these "incident to" services for physicians in private practice is limited to situations in which there is direct physician supervision of auxiliary personnel.  Medicare defines "direct supervision" as while the physician does not need to be present in the same room with their auxiliary personnel, they must be present in the same office suite and immediately be available to provide assistance and direction throughout the time the personnel is performing services.

25.     Medicare defines "auxiliary personnel" to include certain non-physician practitioners or "NNP's", who are being licensed by the states under various programs to assist or act in the place of a physician to include, for example, certified nurse midwives, clinical psychologists, clinical social workers, physician assistants (PA's), nurse practitioners (NP's), and Certified Nurse Specialists (CNS's).  However for services of an NNP to be covered by Medicare as "incident to"

services of a physician, they must meet all the coverage requirements specified within the "incident to" criteria and those services must be performed under the physician's direct supervision.

26.     Supervision by a physician is defined by Medicaid as either personal or direct. Personal supervision states that the physician supervising must be in the building of the office or facility when and where the service is provided. For direct supervision, the physician must be physically present in the room at the time the service is provided. Specific procedures codes call for a specific type of supervision.

27.     Consistent with the general principles of medical record documentation, a provider physician is required to completely document the patient's physical symptoms, diagnosis, treatment and to include the patient's condition that justifies, in this case, the urological services performed and billed to Medicare and Medicaid.

**B.     THE CONSPIRACY**

28.     Beginning on or about January 1, 2003 and continuing thereafter until on or about January 31, 2006 in the Southern District of Texas, and within the jurisdiction of the Court, defendants,

**HOSSEIN LAHIJI, M.D.**
**and**
**NAJMEH VAHID LAHIJI,**

did knowingly conspire and agree together and with other persons known and unknown to the Grand Jury to commit an offense against the United States, that is, to knowingly and willfully execute and attempt to execute a scheme and artifice:

i.      to defraud a health care benefit program, that is, Medicare and Medicaid; and

ii.     to obtain, by means of false and fraudulent pretenses, representations, and promises,

any of the money and property owned by, and under the custody and control of a

health care benefit program, that is, Medicare and Medicaid;

in connection with the delivery of and payment for health care benefits, items and services, namely,

physician urology services.

In violation of Title 18, United States Code, Sections 1349, 1347 and 2.

## C.     MANNER AND MEANS OF THE CONSPIRACY

29.     It was a part of the scheme and artifice to defraud that **Defendant Hossein Lahiji,**

**M.D.** and **Defendant Najmeh Vahid Lahiji**, knowingly billed Medicare and Medicaid for patients

that **Defendant Hossein Lahiji, M.D.** supposedly treated on days when he was absent from the

office.

30.     It was a further part of the scheme and artifice to defraud that **Defendant Hossein**

**Lahiji, M.D.** and **Defendant Najmeh Vahid Lahiji** did instruct their employees, who were only

certified as medical assistants (hereinafter MA's) or who held no license at all, to diagnose and treat

Medicare and Medicaid beneficiaries in his absence.

31.     It was a further part of the scheme and artifice to defraud that **Defendant Najmeh**

**Vahid Lahiji** was present in the office on those days when **Defendant Hossein Lahiji, M.D.** was

not present at the Urology Center.

32.     It was a further part of the scheme and artifice to defraud that **Defendant Hossein**

**Lahiji, M.D.** and **Defendant Najmeh Vahid Lahiji** would and did bill Medicare and Medicaid for

those patients treated by the unlicensed Urology Center employees and unqualified MA's employed

by the Urology Center, as if **Defendant Hossein Lahiji, M.D.** had treated those patients himself.

33.    It was a further part of the scheme and artifice to defraud that, for billing purposes, in some instances, **Defendant Hossein Lahiji, M.D.** and **Defendant Najmeh Vahid Lahiji** would and did disregard the actual medical condition of the Medicare beneficiary or Medicaid recipient and would and did substitute a false diagnosis which qualified for payment by Medicare or Medicaid.

34.    It was a further part of the scheme and artifice to defraud that **Defendant Hossein Lahiji, M.D.**, would and did fail to actively participate and manage the course of treatment of urology services for persons for whom Medicare and Medicaid were being billed, and would and did fail to supervise the urology services that were being billed under his performing provider numbers, but provided by unsupervised medical assistants.

35.    It was a further part of the scheme and artifice to defraud that **Defendant Hossein Lahiji, M.D.**, would and did sign "superbills" and medical records as if he had performed physician services when, in fact, he had not done so.

36.    **Defendant Hossein Lahiji, M.D.** and **Defendant Najmeh Vahid Lahiji** would and did hire and use medical assistants and untrained persons to administer "urology services" to the Medicare and Medicaid beneficiaries at the Urology Center, thereby placing the Medicare beneficiaries and Medicaid recipients at risk of physical danger.

37.    **Defendant Hossein Lahiji, M.D.** and **Defendant Najmeh Vahid Lahiji** would and did bill for urology services as if they had been administered by **Defendant Hossein Lahiji, M.D.** or under the supervision of a physician when, in fact, the medical assistants and untrained persons performing "urology services" were rarely supervised by a physician.

38.    **Defendant Hossein Lahiji, M.D.** and **Defendant Najmeh Vahid Lahiji** would and did bill and cause to be billed Medicare and Medicaid for urology services allegedly performed by

8

Defendant Hossein Lahiji, M.D. when, in fact, Defendant Hossein Lahiji, M.D. was traveling outside the State of Texas and/or outside the United States and the medical assistants were performing these "urology services" without any supervision from any physician in violation of protocols established by both Medicaid and Medicare.

39.     In addition, Defendant Hossein Lahiji, M.D. and Defendant Najmeh Vahid Lahiji would and did bill Medicare and Medicaid for urology services which were never performed. These fictitious billings were submitted  in order to increase the payments from Medicare and Medicaid.

40.     Defendant Hossein Lahiji, M.D. and Defendant Najmeh Vahid Lahiji would and did routinely bill Medicare and Medicaid for urology services that were not medically necessary and for services not provided.

41.     Defendant Hossein Lahiji, M.D. and Defendant Najmeh Vahid Lahiji would and did submit to Medicare and Medicaid false and fraudulent claims for beneficiaries between January 1, 2003 through January 31, 2006.

All in violation of Title 18, United States Code, Sections 1349, 1347 and 2.

## COUNTS TWO THROUGH NINE
### (Health Care Fraud - 18 U.S.C. §§ 1347 and 2)

**D.     INTRODUCTION**

42.     The Grand Jury adopts, realleges, and incorporates herein the allegations in paragraphs 1 through 27 of the Introduction to Count One of this Indictment as if set out fully herein.

**E.     THE SCHEME AND ARTIFICE**

43.     It was the purpose of the scheme to fraudulently obtain money from Medicare and Medicaid by billing Medicare and/or Medicaid for physician urology services that were:

1) not covered by Medicare or Medicaid;

2) not ordered by a physician;

3) not provided by qualified persons; and/or

4) not provided at all.

44.     It was a part of the scheme and artifice to defraud that **Defendant Hossein Lahiji, M.D.** and **Defendant Najmeh Vahid Lahiji**, submitted claims to Medicare and Medicaid which were false or fraudulent in numerous ways including the following:

a.  claimed services using a false diagnosis;

b.  claimed services not performed;

c.  claimed services not ordered by a physician;

d.  claimed evaluations not performed by a physician; and

e.  claimed services provided by unqualified persons.

45.     For each Medicare or Medicaid payment received by **Defendant Hossein Lahiji, M.D.** and **Defendant Najmeh Vahid Lahiji**, one or more of the above representations were false.   The operations of the Urology Center, during the aforementioned time periods, were not directed or supervised by **Defendant Hossein Lahiji, M.D.**, or any other licensed physician, thus risking the medical and physical safety of the Medicare and Medicaid beneficiaries.

**F.     MANNER AND MEANS OF THE SCHEME TO DEFRAUD**

46.     The Grand Jury adopts, re-alleges, and incorporates herein the allegations in paragraphs 29 through 41 of the Manner and Means of the Conspiracy in Count One of the Indictment as if set out fully herein.

**G.     <u>EXECUTION OF THE SCHEME TO DEFRAUD</u>**

47.     On or about the dates alleged in the counts below defendants,

10

**HOSSEIN LAHIJI, M.D.**
**and**
**NAJMEH VAHID LAHIJI,**

aided and abetted by others known and unknown to the Grand Jury, did knowingly and willfully

execute and attempt to execute a scheme and artifice:

    i.     to defraud a health care benefit program; and

    ii.     to obtain, by means of false and fraudulent pretenses, representations, and promises,

         any of the money and property owned by, and under the custody and control of a

         health care benefit program;

in connection with the delivery of and payment for health care benefits, items and services, namely,

by submitting and causing to be submitted false and fraudulent claims to Medicare and Medicaid for

physician urology services in connection with the diagnosis and treatment of patients in the amounts

indicated below:

| Count | Patient Initials | Medicare Number | Medicaid Number | Claim Number(s) | Date of Service | CPT code | Amount Billed |
|---|---|---|---|---|---|---|---|
| 2. | J.G. | N/A | xxxxx4192 | 200501059093127 | 09/14/2004 | 74000 99211 | $ 150.00 35.00 $185.00 |
| 3. | J.F. | xxxxx5501A | xxxxx1601 | 452904266011000 200428129301751 | 09/17/2004 | J9217 96400 | $ 2,800.00 90.00 $ 2,890.00 |
| 4. | A.L. | xxxxx9254A | xxxxx4632 | 452805042661100 200506760892467 | 02/08/2005 | J9217 | $ 700.00 |
| 5. | J.B. | xxxxx2793A | xxxxx1468 | 452906016250890 200602937451656 | 01/03/2006 | J3315 36415 | $ 600.00 20.00 $ 620.00 |
| 6. | J.F. | xxxxx5501A | xxxxx1601 | 451506023287510 200605041420678 | 01/06/2006 | J3315 | $ 1,800.00 |
| 7. | A.G. | xxxxx4213A | xxxxx4883 | 455806073916390 200602937443701 | 01/09/2006 | 99211 51702 | $ 35.00 175.00 210.00 |

| 8. | D.M. | xxxxx2095A | xxxxx7439 | 455806076665940 200602937455436 | 01/10/2006 | 99213 76857 76857 53600 | $ 70.00 150.00 70.00 250.00 $ 540.00 |
|---|---|---|---|---|---|---|---|
| 9. | S.C. | xxxxx0442A | xxxxx2264 | 455806102939530 200617766542552 | 01/18/2006 | J3315 | $1,800.00 |

In violation of Title 18, United States Code, Section 1347 and Title 18, United States Code, Section 2.

A TRUE BILL

FOREPERSON

JOSE ANGEL MORENO
UNITED STATES ATTORNEY

ASSISTANT UNITED STATES ATTORNEY