UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 11-030-03 |
| | § | |
| HOSSEIN LAHIJI, M.D.. | § | |

## PLEA AGREEMENT

The United States of America, by and through Kenneth Magidson, United States Attorney for the Southern District of Texas, and Carolyn Ferko and James McAlister, Assistant United States Attorneys, and the Defendant, Hossein Lahiji, M.D. ("Defendant"), and Defendant's counsel Michael McCrum, Esq. (collectively, the "Parties"), pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement ("Plea Agreement"), the terms and conditions of which are as follows:

### The Parties' Agreement

1.    Defendant agrees to plead guilty to Count One and Count Four of the Third Superseding Indictment. Count One charges Defendant with conspiracy to commit health care fraud, in violation of 18 U.S.C. §§ 1349, 1347, and 2. Count Four charges Defendant with conspiracy to violate the Iranian Sanctions, in violation of 50 U.S.C. §§ 1705(a) and (c) and 31 C.F.R. §§ 560.203, 560.206, and 560.207. Defendant, by entering this plea, agrees that he is waiving any right to

have the facts that the law makes essential to the punishment either charged in the Third Superseding Indictment or proven to a jury or judge beyond a reasonable doubt. Defendant further agrees to persist in that plea through sentencing as contemplated under Rule 11(c)(1)(C). This Plea Agreement contemplates that Defendant will be denaturalized, will leave the United States upon the completion of any term of imprisonment, and will relinquish his right to remain in the United States, as more fully described in *Addendum II* of this Plea Agreement.

2.    Additionally, the Parties have agreed to a concurrent sentence, not to exceed the sentence of imprisonment imposed by the United States District Court for the District of Oregon in Case No. 10-cr-0056, a total fine of $1,250,000.00, and restitution of $703,524.74, jointly and severally with co-defendant Najmeh Vahid Lahiji, with a specific agreed condition that Defendant's United States citizenship shall be revoked and that Defendant shall be removed from the United States as described in *Addendum II* to this Plea Agreement, which is incorporated by reference.

3.    It is agreed by the Parties that Defendant shall surrender himself to the United States Marshals Service at the time ordered by the Honorable Melinda Harmon, which shall run concurrent with the pending sentence out of the District of Oregon, at which time he will be transported to a federal correctional facility, as determined by the Bureau of Prisons. The co-defendant in this case, Najmeh

2

Vahid Lahiji, agrees to surrender herself to the United States Marshals Service at the time ordered by the Honorable Melinda Harmon, which shall run concurrent with the pending sentence out of the District of Oregon, at which time she will be transported to a federal correctional facility, as determined by the Bureau of Prisons.

4.    If this Plea Agreement is not accepted by the Court, Defendant may withdraw his guilty plea.

### Punishment Range

5.    The **statutory** maximum penalty for each violation of 18 U.S.C. §§ 1349, 1347, and 2 is a term of imprisonment of not more than ten years' imprisonment and a fine of not more than $250,000 or not greater than twice the gross gain or twice the gross loss, pursuant to 18 U.S.C. § 3571(d).  Additionally, Defendant may receive a term of supervised release after imprisonment of up to three years.  18 U.S.C. §§ 3559(a), 3583(b).  The **statutory** maximum penalty for each violation of 50 U.S.C. §§ 1705(a) and (c) and 31 C.F.R. §§ 560.203, 560.206 and 560.207, is up to 20 years' imprisonment and a fine of not more than $1,000,000.  Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for the entire term of supervised release, without credit for time already served on the term of supervised release

prior to such violation.    18 U.S.C. §§ 3559(a) and 3583(e)(3).    Defendant understands that he cannot have the imposition or execution of the sentence suspended, and that he is not eligible for parole.

## Mandatory Special Assessment

6.    Pursuant to 18 U.S.C. § 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction.  The payment will be by cashier's check or money order payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas  77208, Attention: Finance.

## Immigration Consequences

7.    Defendant's attorney has advised Defendant of the immigration consequences resulting from Defendant's plea of guilty and agreeing to the terms of this Plea Agreement, including denaturalization, removal from the United States, and permanent inadmissibility thereafter, as fully described in *Addendum II*. Defendant has been advised that entering into this Plea Agreement will result in Defendant's loss of his United States citizenship and forfeiture of his naturalization certificate, his removal from the United States, a permanent bar to his returning to the United States without express, written permission to do so from the Secretary of the Department of Homeland Security or his delegate, and loss of

4

any and all rights that attach to, *inter alia*, naturalization, lawful permanent residence, and being charged in immigration removal proceedings. See ***Addendum II*** to this Plea Agreement for all **Immigration Consequences**.

**Non-Cooperation**

8.    The government affirms that neither Defendant nor his co-defendant, nor any person acting on their behalf, has cooperated with the United States government in its investigation of any third person or entity, and that this Plea Agreement is entered into by the government solely in consideration of agreement set forth above and the evidence in each case.

**Waiver of Appeal**

9.    Defendant is aware that 28 U.S.C. § 1291 and 18 U.S.C. § 3742 afford a defendant the right to appeal the conviction and sentence imposed. With regard to this case and Defendant's federal criminal case in the District of Oregon (case number 10-CR-0056), Defendant knowingly and voluntarily waives the right to appeal the convictions and sentences imposed, or the manner in which the sentence was determined. Additionally, Defendant is aware that 28 U.S.C. § 2255 affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. Defendant knowingly and voluntarily waives the right to contest his conviction or sentence by means of any post-conviction proceeding. Defendant expressly waives his right to appeal and any

5

§ 2255 "collateral attack" with regard to this case and to Defendant's federal criminal case in the District of Oregon (case number 10-CR-0056). With regard to his federal criminal case in the District of Oregon (case number 10-CR-0056), Defendant shall file a motion to dismiss his current, pending appeal, which is filed in the United States Court of Appeals for the Ninth Circuit, no later than ten days after the acceptance of the plea of guilty by the Honorable Melinda Harmon.

10.    In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court in this case. It is the request of the Parties that the Court commit no later than in advance of sentencing to be bound by the recommendations of the Parties as to both the Defendants in a manner analogous to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. Should the Court determine not to follow the sentencing recommendations of the Parties as to both the Defendants, the Parties will jointly recommend that the Court enter an order allowing a new trial in the Southern District of Texas for both the Defendants, so long as each of the Defendants specifically waives his or her former jeopardy and speedy trial rights, and any applicable statute of limitations.

11.    Defendant understands and agrees that all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this Plea Agreement.

## The United States' Agreements

12.   The United States agrees to each of the following:

(a)   If Defendant pleads guilty to Count One and Count Four of the Third Superseding Indictment and persists in that plea through sentencing, and if the Court accepts this Plea Agreement, the United States will move to dismiss any remaining counts of the Third Superseding Indictment, and the underlying indictments in accordance with *Addendum II* to this Plea Agreement;

(b)   The United States and the Defendant agrees that, for Count One, restitution be payable immediately to the Centers for Medicare and Medicaid Services in the amount of $623,057.69; to Aetna in the amount of $13,003.63; to Blue Cross and Blue Shield in the amount of $49,804.44; to Humana in the amount of $2,734.78; and to United Healthcare, in the amount of $7,333.97, for a grand total of $703,524.74; all jointly and severally with co-defendant Najmeh Vahid Lahiji; and a fine of $250,000 payable immediately to the Clerk of the Court;

(c)   The United States and the Defendant agrees that, for Count Four, a fine of $1,000,000 be payable immediately to the Clerk of the Court; and

(d)   The United States will also recommend a sentence of imprisonment that is concurrent with that imposed by the United States District Court for the District of Oregon in case number 10-cr-0056 and further request this Court's enforcement of *Addendum II* of this Plea Agreement and imposition of civil immigration orders, as described therein.

## Agreement Binding - Southern District of Texas Only

13.   The United States agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for offenses arising from conduct charged in the Indictment.   This Plea Agreement binds only the United States

Attorney's Office for the Southern District of Texas and Defendant. It does not bind any other United States Attorney.

## United States' Non-Waiver of Appeal

14. The United States reserves the right to carry out its responsibilities under the Sentencing Guidelines. Specifically, the United States reserves the right:

(a) to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b) to set forth or dispute sentencing factors or facts material to sentencing;

(c) to seek resolution of such factors or facts in conference with the Defendant's counsel and the Probation Office;

(d) to file a pleading relating to these issues, in accordance with U.S.S.G. § 6A1.2 and 18 U.S.C. § 3553(a); and

(e) to appeal the sentence imposed or the manner in which it was determined.

## Rights at Trial

15. Defendant represents to the Court that he is satisfied that his attorney has rendered effective assistance. Defendant understands that by entering into this Plea Agreement, he surrenders certain rights as provided in this Plea Agreement. Defendant understands that those rights include the following:

(a) If Defendant persisted in a plea of not guilty to the charges, Defendant would have the right to a speedy jury trial with the assistance of

counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

(b)    At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court.

(c)    At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he could testify on his own behalf.

**Factual Basis for Guilty Plea**

16.    Defendant is pleading guilty because he <u>is</u> guilty of the charges contained in Counts One and Four of the Third Superseding Indictment. If this case were to proceed to trial, the United States could prove each element of the charged offenses beyond a reasonable doubt. The following facts, among others, would be offered to establish Defendant's guilt:

**Count One:**

**Hossein Lahiji, M.D.,** and **Najmeh Vahid Lahiji** are owners, operators and employees of Lahiji Urology Centers, currently located in McAllen, Texas. **Hossein Lahiji, M.D.,** and **Najmeh Vahid Lahiji,** his wife and office manager, did conspire and agree to defraud the United States by submitting false and fraudulent claims for medical procedures to Texas Medicaid program, the Medicare Programs, and private insurance companies, which included Aetna, Blue Cross and Blue Shield, Humana, and United Healthcare. **Hossein Lahiji, M.D.,** was an approved provider for Medicaid, Medicare, and these private insurance companies.

From 2003 to 2011, both **Hossein Lahiji, M.D.,** and **Najmeh Vahid Lahiji** conspired and agreed to knowingly and intentionally instruct the employees of the Lahiji Urology Center to keep the office open and continue to treat patients during times when **Hossein Lahiji, M.D.,** was absent from the United States. The only individuals working in the office at those times when **Hossein Lahiji, M.D.,** was traveling outside the country, were employees who were either unlicensed or held a medical assistant's (MA's) certificate. **Hossein Lahiji, M.D.,** and **Najmeh Vahid Lahiji** directed these MAs to treat patients while **Hossein Lahiji, M.D.,** was absent from the office.

Both **Hossein Lahiji, M.D.,** and **Najmeh Vahid Lahiji** knew and understood that a substitute physician was required when **Hossein Lahiji, M.D.,** was absent from the office for certain procedures to be performed. However, no other physician and/or qualified medical personnel were present during times when **Hossein Lahiji, M.D.,** was absent from the United States. **Hossein Lahiji, M.D.,** and **Najmeh Lahiji** did this knowingly and intentionally. Further, they both did conspire and agree to knowingly and intentionally fraudulently submit claims and cause claims to be fraudulently submitted by their employees to Medicaid, Medicare, and private insurance companies for medical treatments that required a qualified medical professional present, not an MA.

When **Hossein Lahiji, M.D.,** was present in his office, there were days when, both **Hossein Lahiji M.D.,** and his wife and office manager, **Najmeh Vahid Lahiji** did conspire and agree to regularly bill routine office visits as complex consultations to obtain higher reimbursement from Medicare, Medicaid and private health insurance than **Hossein Lahiji M.D.,** was entitled to receive. On numerous occasions, including on or about December 30, 2009, Defendant **Hossein Lahiji, M.D.,** would or did allegedly "treat" 80 patients between the hours of 7:20 a.m. and 6:35 p.m., and did fraudulently submit bills using CPT codes for both office visits and consultations to Medicare, Medicaid and private insurance, for a total of 1,961 minutes or 32.6 hours of alleged "consultations."

Medicare and Medicaid are public health care benefit programs, and Aetna, Blue Cross and Blue Shield, Humana, and United Healthcare are private health care benefit programs, all affecting commerce, all under which a medical benefit, item, or service is provided to an individual for which payment may be made under the plan or contract. (18 U.S.C. § 24.)

**Count Four:**

10

Defendant **Hossein Lahiji, M.D.,** was a United States Citizen with a valid Iranian passport, residing in the Southern District of Texas and elsewhere. Co-defendant **Najmeh Vahid Lahiji** was a Permanent Resident Alien of the United States and a citizen of Iran residing in the Southern District of Texas and elsewhere. **Hossein Lahiji, M.D.,** and **Najmeh Vahid Lahiji** did knowingly and willfully conspire and agree to transfer money to Iran utilizing an unlicensed money remitter business/hawala called the Espadana Exchange to avoid United States banking regulations and to make it appear that they were not violating the International Emergency Economic Powers Act ("IEEPA") and the Iranian transactions regulations promulgated thereunder, also known as and referred to as the "United States' embargo with Iran" and the "Iranian Sanctions." 31 C.F.R. § 560.203 of the Iranian Sanctions prohibits "[a]ny transaction by any United States person or within the United States that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions contained in this part." H.H., the owner and operator of the Espadana Exchange, would testify that the Lahijis used the unlicensed money transmitter in an effort to conceal the transactions from the United States Government.

On or about July 7, 2008, **Hossein Lahiji, M.D.,** signed two forms at Lone Star National Bank in McAllen, Texas, entitled, "Authorization to Transfer Funds Outgoing Wire Transfer Request" whereby he authorized two wire transfers, each in the amount of $200,000, to the Espadana Exchange, LLC from the Lahiji Urology Center, PA account xxx9171. On or about July 15, 2008, **Najmeh Vahid Lahiji** sent by facsimile to Lone Star National Bank in McAllen, Texas, a memorandum requesting two wire transfers from account XXX9171, one in the amount of $85,000 and the other for $50,000, to be sent to the Espadana Exchange, LLC in Laguna Hills, California.

**Hossein Lahiji, M.D.,** and **Najmeh Vahid Lahiji** did knowingly and willfully communicate by telephone and email with H.H. and his partner in Isfahan, Iran, in order to confirm when the Lahijis' monies were transferred to Espadana Exchange's account in the United States. Once received, the unlicensed money remitter's partner, who was located in Iran, would then transfer the equivalent amount of Iranian currency, less their fees, to either the Lahijis' relatives in Isfahan, Iran, or into the Defendants' bank accounts in Iran.

It was a further part of the conspiracy that **Hossein Lahiji, M.D.,** and **Najmeh Vahid Lahiji** knowingly and willfully would and did send money to Iran for the purpose of making an investment on behalf of **Hossein Lahiji, M.D.,** and

11

**Najmeh Vahid Lahiji** in real estate rental property in Iran. The Iranian Sanctions further prohibit "any new investment by a United States person in Iran or in property (including entities) owned or controlled by the Government of Iran."

As evidence of the unlawful investments in Iran, the United States would present the following:

1.) On or about January 3, 2007, in response to a question from the Lahijis' accountant, T.W., **Najmeh Vahid Lahiji** wrote the following email from her MSN email account:
   "The first three transactions, (245,000.00, 30,000.00, 25,700.00) are real estate we have purchased in Iran. This business we have with my father for construction. He buys the property, builds, and then sells them. We take 60% of the profit."

2.) In or about July 2008, **Najmeh Vahid Lahiji** prepared a document titled "Mr. Vahid Books," which contained information about purchases of land and investments in Iran and provided in part "$500M [presumed Tomans, which is equal to 10,000 Iranian Rials] of this money was placed in the bank and will be available on the 27th of this month." The document further references "Money Mr. Vahid owes Dr. Lahiji from other sources: $35,900,000" and "Other properties of Dr. Lahiji: Zeeyar and Sajadeeye." **Najmeh Vahid Lahiji** further wrote in the document titled "Mr. Vahid Books," the following:

   "Management Salary: Since we do need someone trustworthy to take care of matters here, do you think, it is fair to start to pay a fair salary to my dad for his management of our money and property and other duties in Iran? ... I think it is not fair for him to so much running around without getting paid since does not use our money for himself....He has to take care of tenants now in our new home too as he has been doing in Sajadeeye and giving us the money."

**Hossein Lahiji, M.D.,** and **Najmeh Vahid Lahiji** and others, did conspire and agree to knowingly, intentionally, and willfully impede and impair the Office of Foreign Assets Control ("OFAC"), an agency of the United States, in the enforcement of the Iranian embargo in violation of 50 U.S.C. §§ 1705 (a) and (c) and 31 C.F.R. §§ 560.203, 560.206, and 560.207, by transferring monies to the country of Iran, without obtaining prior approval from the OFAC, and in violation of the Iranian Sanctions.

12

## Breach of Plea Agreement

17.   If Defendant should fail in any way to fulfill completely all of the obligations under this Plea Agreement, the United States will be released from its obligations under this Plea Agreement, and Defendant's plea will stand.  If at any time Defendant retains, conceals or disposes of assets in violation of this Plea Agreement, then the United States may move the Court to set aside the guilty plea and reinstate prosecution.   Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this Plea Agreement, and all leads derived therefrom, will be used against Defendant in any prosecution.

## Restitution, Forfeiture, and Fines

18.   This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest.  Defendant agrees not to dispose of any assets or take any action that would effect a transfer of property in which he has an interest, unless Defendant obtains the prior written permission of the United States.

19.   Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500) by the deadline set by the United States, or if no deadline is set, prior to sentencing.  Defendant agrees to

authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to truthfully and fully answer any questions by the United States relating to Defendant's complete financial disclosure.

20. Defendant agrees to promptly take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of his assets to deliver forthwith all funds and records of such assets to the United States.

21. Defendant understands that forfeiture, restitution, and fines are separate components of sentencing, and that they are separate obligations.

**Restitution**

22. Defendant agrees to pay full restitution to all identified victims, regardless of the counts of conviction. Defendant stipulates and agrees that as a result of his criminal conduct, the victims incurred a monetary loss of at least

$703,524.74. Defendant understands and agrees that the amount of restitution to fully compensate the victims is $703,524.74. The Defendant agrees that restitution imposed by the Court will be due and payable immediately, and that Defendant will not attempt to avoid or delay payment. Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, any restitution orders imposed by the Court.

## Forfeiture

23.   Defendant agrees to waive any and all interest in any asset which is the subject of a related administrative or judicial forfeiture proceeding, whether criminal or civil, federal or state.

24.   Defendant consents to the order of forfeiture becoming final as to Defendant immediately following this guilty plea, pursuant to Federal Rule of Criminal Procedure 32.2(b)(4)(A).

25.   Defendant waives the right to challenge the forfeiture of property in any manner, including by direct appeal or in a collateral proceeding.

## Fines

26.   Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the United States for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that the total fines of $1,250,000 imposed by the Court will

be due and payable immediately, and Defendant will not attempt to avoid or delay payment.    Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

### Complete Agreement

27.    This written Plea Agreement, consisting of thirty-two (32) pages, including the attached *Addendum I* and *Addendum II* signed by Defendant and his attorney, constitutes the complete Plea Agreement between the United States, the Defendant, and Defendant's counsel.    No promises or representations have been made by the United States except as set forth in writing in this Plea Agreement, including the addenda.    Defendant acknowledges that no threats have been made against him, and that he is pleading guilty freely and voluntarily because he is guilty.

28.    Any modification of this Plea Agreement must be in writing and signed by all Parties.


Filed at Houston, Texas, on 30 day of December, 2013.

_____
Defendant

Subscribed and sworn to before me on the $3\overset{0}{}^{th}$ day of December, 2013.

DAVID J. BRADLEY, Clerk
UNITED STATES DISTRICT CLERK
By:

Deputy United States District Clerk

APPROVED:

Kenneth Magidson
United States Attorney

By: _____
CAROLYN FERKO
Assistant United States Attorney
Southern District of Texas

MICHAEL McCRUM, ESQ.
Attorney for Defendant

_____
JAMES McALISTER
Assistant United States Attorney
Southern District of Texas